# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| CLENDON ALVIN PEARSON, | ) | No. CV 10-8516-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

## I.

## PROCEEDINGS

Plaintiff filed this action on November 9, 2010, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 27, 2010, and July 28, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 29, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on January 3, 1961.  [Administrative Record ("AR") at 46, 124.]  He has a twelfth grade education [AR at 121, 127, 142], and past relevant work experience as a roofer. [AR at 46, 56, 118, 157.]

Plaintiff protectively filed his application for Supplemental Security Income payments on June 2, 2008, and filed his application for Disability Insurance Benefits on June 6, 2008, alleging that he has been unable to work since November 3, 2007, due to lower and mid-back pain, hip pain, and high blood pressure. [AR at 59-60, 98-100, 116-23, 148-54.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 63-67, 69, 74-81.]  A hearing was held on April 6, 2010, at which time plaintiff appeared with counsel and testified on his own behalf.  [AR at 43-58.]  A vocational expert also testified.  [AR at 56-57.]  On April 21, 2010, the ALJ determined that plaintiff was not disabled. [AR at 14-24.]  On September 1, 2010, the Appeals Council denied plaintiff's request for review. [AR at 5-9.]  This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

1   past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

2   case of disability is established.  The Commissioner then bears the burden of establishing that

3   the claimant is not disabled, because he can perform other substantial gainful work available in

4   the national economy.  The determination of this issue comprises the fifth and final step in the

5   sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

6   F.2d at 1257.

7

8   **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

10  gainful activity since his alleged disability onset date, November 3, 2007. [AR at 16.][1]  At step two,

11  the ALJ concluded that plaintiff has the severe impairments of multi-level degenerative changes

12  in the lumbar spine with a history of subacute compression fracture at L1, and obesity.  [Id.]  At

13  step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the

14  impairments in the Listing.  [AR at 17.]  The ALJ further found that plaintiff retained the residual

15  functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b),

16  416.967(b).[3]  Specifically, the ALJ found that plaintiff "can lift or carry up to 20 pounds occasionally

17  and 10 pounds frequently, and stand or walk six hours in an eight-hour work day with normal

18  breaks, with intermittent sitting."  [Id.]  The ALJ also found that plaintiff "is further limited by a need

19  for a sit/stand option which is available but does not require that it be at will."  [Id.]  At step four,

20  the ALJ concluded that plaintiff was not capable of performing his past relevant work.  [AR at 23.]

21  At step five, the ALJ found, based on the vocational expert's testimony and the application of the

22

23      [1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social
24  Security Act through September 30, 2012.  [AR at 16.]

25      [2]    RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
        [3]    20 C.F.R. §§ 404.1567(b), 416.967(b) define "light work" as work involving "lifting no more
27  than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and
    requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and
28  pulling of arm or leg controls."

4

1  Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national

2  economy that [plaintiff] can perform." [Id.]  Accordingly, the ALJ determined that plaintiff is not

3  disabled.  [AR at 24.]

4

5                                              **V.**

6                                    **THE ALJ'S DECISION**

7         Plaintiff contends that: (1) the ALJ failed to properly consider the treating physician's

8  opinion; (2) the RFC assessment is not supported by substantial evidence and the hypothetical

9  question posed to the vocational expert was incomplete; and (3) the ALJ improperly discredited

10  plaintiff's testimony.  [Joint Stipulation ("JS") at 4.]  As set forth below, the Court agrees with

11  plaintiff, in part, and remands the matter for further proceedings.

12

13  **TREATING PHYSICIAN'S OPINION**

14         Plaintiff contends that the ALJ failed to properly consider the opinions of plaintiff's treating

15  pain management specialist, Dr. Alireza Katouzian.  [JS at 4-12.]

16         In evaluating medical opinions, the case law and regulations distinguish among the opinions

17  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

18  examine but do not treat the claimant (examining physicians); and (3) those who neither examine

19  nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527,

20  416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians

21  are given greater weight than those of other physicians, because treating physicians are employed

22  to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue,

23  495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite

24  the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound

25  to accept the opinion of a treating physician.  Where a treating physician's opinion does not

26  contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount

27  it.  Where a treating physician's opinion conflicts with other medical evidence, an ALJ may afford

28  it less weight only if the ALJ provides specific and legitimate reasons for discounting the opinion.

1   See Lester, 81 F.3d at 830; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an

2   opinion of an examining physician that constitutes substantial evidence, the treating physician's

3   opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling[4] 96-2p (a finding

4   that a treating physician's opinion is not entitled to controlling weight does not mean that the

5   opinion is rejected).   Similar rules apply to an ALJ's evaluation of an examining physician's

6   opinion.  Lester, 81 F.3d at 830-31.

7        The record shows that Dr. Katouzian treated plaintiff on at least a monthly basis between

8   November, 2009, and April, 2010.  [AR at 244-47, 254, 261-73.]  After an initial consultation on

9   November 6, 2009 [see AR at 254], Dr. Katouzian performed a lumbar epidural steroid injection

10   on plaintiff on November 13, 2009.  [See AR at 254, 272.]  On December 4, 2009, Dr. Katouzian

11   saw plaintiff again and noted that plaintiff had "had [a] greater than 50% reduction of his low back

12   pain and bilateral leg pain symptoms."  [AR at 270.]  On the same day, Dr. Katouzian performed

13   a lumbar transforaminal epidural steroid injection on plaintiff.  [See AR at 254, 271.]  Dr. Katouzian

14   saw plaintiff again on January 15, 2010, and noted that plaintiff "has had some moderate

15   improvement of his low back pain and bilateral lower extremity radiculopathy following lumbar

16   epidural steroid injections.  He continues to be symptomatic however with low back pain and

17   bilateral lower extremity radiculopathy."  [AR at 245.]  Thus, Dr. Katouzian stated that he would

18   seek authorization from plaintiff's insurance company to perform a trial spinal cord stimulation.

19   [Id.]  On February 11, 2010, Dr. Katouzian saw plaintiff again and noted that plaintiff "was found

20   not to be a surgical candidate due to the extensive nature of his lumbar degenerative disc

21   disease."  [AR at 244.]  On February 12, 2010, Dr. Katouzian performed a lumbar facet injection

22   on plaintiff.   [See AR at 246-47, 254, 268-69.]  On March 12, 2010, Dr. Katouzian saw plaintiff

23   again, noting that plaintiff "apparently had excellent temporary relief of his back pain with virtually

24   no pain for the first 48-hours.  He still continues to have some relief with approximately 30 to 40%

25

26        [4]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27   "constitute Social Security Administration interpretations of the statute it administers and of its
     own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28   the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

from the lumbar facet injections . . . . We are still awaiting authorization from Aetna regarding trail [sic] of percutaneous spinal cord stimulation."  [AR at 265.]  On March 26, 2010, Dr. Katouzian completed a "Medical Source Statement (Physical)" for plaintiff.  [AR at 249.]  In the Statement, Dr. Katouzian opined that plaintiff could lift or carry less than 10 pounds occasionally, could lift or carry less than 10 pounds frequently, could stand or walk with normal breaks for less than 2 hours in an 8-hour work day, and would need to alternate between sitting and other positions during an 8-hour work day.  [Id.]  Dr. Katouzian also opined that plaintiff would have severe limitations on his ability to push or pull with his upper and lower extremities.  [Id.]  Finally, Dr. Katouzian stated that plaintiff "would need to lie down and rest during the day.  He has symptoms of fatigue, lightheadedness and somnolence due to back pain and leg pain and side effects of his pain medications."  [Id.]  Dr. Katouzian opined that plaintiff's limitations would likely disrupt a regular job schedule during 100 to 150 hours each month.  [Id.]  Finally, on April 23, 2010, Dr. Katouzian again performed a lumbar epidural steroid injection on plaintiff.  [AR at 261.]

In rejecting Dr. Katouzian's opinions, the ALJ found that "[t]he medical records show that Dr. Katouzian has a very limited treating relationship with [plaintiff], with an initial meeting regarding a spinal cord stimulator trial occurring on November 6, 2009, and then two follow-up visits on January 15, 2010, and February 11, 2010."  [AR at 22.]  In addition, the ALJ stated that "the underlying objective medical evidence fails to support the severe limitations set forth by Dr. Katouzian," noting that "Dr. Katouzian described no findings on physical examination that would support such severe limitations."  [Id.]  For these reasons, the ALJ gave "limited weight" to Dr. Katouzian's opinion.  [Id.]  As explained below, the Court concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Katouzian's treating opinion.

First, the ALJ inaccurately characterized Dr. Katouzian's treating relationship with plaintiff when she stated that Dr. Katouzian had only seen plaintiff on November 6, 2009, January 15, 2010, and February 11, 2010.  The record shows that Dr. Katouzian also saw plaintiff for consultations or to perform pain management procedures on November 13, 2009, December 4, 2009, February 12, 2010, March 12, 2010, and April 23, 2010.  Thus, there is evidence that Dr.

1   Katouzian saw and treated plaintiff at least eight times over a period of a little over four months.

2   The ALJ's rejection of Dr. Katouzian's opinion on the basis that he had a "very limited treating

3   relationship" with plaintiff was inaccurate and improper.  Indeed, Dr. Katouzian appears to be the

4   medical professional with the most knowledge of plaintiff's condition during the time prior to the

5   hearing.  A treating physician's opinion should be afforded great weight so long as the physician

6   has seen the claimant "a number of times and long enough to have obtained a longitudinal picture

7   of [the claimant's] impairment."  20 C.F.R §§ 404.1527(d)(2)(i), 416.927(d)(2)(i).

8         Second, the ALJ's conclusion that Dr. Katouzian's opinions are not supported by the

9   objective evidence is insufficient [see AR at 22], as it does not reach the level of specificity

10  required to reject the opinion of a treating physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23

11  (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or

12  are contrary to the preponderant conclusions mandated by the objective findings does not achieve

13  the level of specificity our prior cases have required, even when the objective factors are listed

14  seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own

15  interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote

16  omitted).  An ALJ can meet the requisite specific and legitimate standard for rejecting a treating

17  physician's opinion deemed inconsistent with or unsupported by the medical evidence "by setting

18  out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

19  interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  Here, the ALJ's

20  conclusory assertion that Dr. Katouzian's opinion was not supported by objective evidence in the

21  record [see AR at 22], without explaining how the record was inconsistent with Dr. Katouzian's

22  opinion and stating her interpretation thereof, does not provide the degree of specificity required

23  to reject Dr. Katouzian's opinion.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)

24  (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical

25  findings in the record was "broad and vague, failing to specify why the ALJ felt the treating

26  physician's opinion was flawed"); see also, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D.

27  Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's

28

opinion as inconsistent with the medical treatment, where the ALJ did not specify how the treatment record was inconsistent with the physician's opinion and state his interpretation thereof).

Moreover, the ALJ's assertion that "Dr. Katouzian described no findings on physical examination that would support such severe limitations" is not wholly accurate. [AR at 22.] It is improper to reject a treating physician's opinion where he provided at least some objective observations and testing in addition to subjective opinions. See Embrey, 849 F.2d at 421; see also 20 C.F.R. §§ 404.1527, 416.927 (the proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (when the treating physician diagnosed the claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, the ALJ erred in finding that the claimant had not set forth sufficient evidence to substantiate the mental impairment). In September, 2009, an MRI of plaintiff's lumbar spine was performed and compared with an MRI performed in August, 2006. The September, 2009, MRI revealed that "[a]t L2-L3, there is increase in signal intensity within the disc most consistent with 'annular tears.' Posteriorly, there is a 2 mm broad based disc protrusion, greater on the right. These findings have increased since the [August, 2006] examination." [AR at 252.] In October, 2009, an MRI of plaintiff's thoracic spine was performed, which indicated "[c]hronic back pain [and] [d]ifficulty walking or standing." [AR at 251.] On November 2, 2009, Dr. Samuel Small, plaintiff's orthopedic surgeon, referred plaintiff to Dr. Katouzian for "pain management and [a] spinal cord stimulator." [AR at 239-40.] Dr. Katouzian performed lumbar epidural steroid injections on plaintiff on November 13, 2009, and December 4, 2009. [AR at 254, 271-72.] On December 4, 2009, Dr. Katouzian noted that "[p]laintiff is a patient with a history of multilevel thoracic and lumbar degenerative disc disease with an old L1 compression fracture as well as multilevel disc protrusion with annular tears documented by MRI. He has also had a history of lumbar radiculopathy, bilateral lower extremities in the L2-3, L3-4 and L4-5 distributions." [AR at 270.] Dr. Katouzian also noted that "[plaintiff] has failed conservative treatment including opioid systemic analgesics, muscle relaxants, neuropathic pain medications, non-steroidal anti-inflammatory medications, rest and a full trial of physical

1   therapy." [Id.] On January 15, 2010, Dr. Katouzian opined that despite "some moderate

2   improvement of his low back pain and bilateral lower extremity radiculopathy following [the] lumbar

3   epidural steroid injections. . . . [plaintiff] continues to be symptomatic . . . with low back pain and

4   bilateral lower extremity radiculopathy." [AR at 245.] On the same day, Dr. Katouzian stated that

5   he would seek authorization from plaintiff's insurance company to perform a trial spinal cord

6   stimulation. [Id.] On February 12, 2010, Dr. Katouzian performed a lumbar facet injection on

7   plaintiff. [See AR at 246-47, 254, 268-69.] Despite noting that plaintiff "continues to have some

8   relief with approximately 30 to 40% from the lumbar facet injections," Dr. Katouzian continued to

9   await authorization from plaintiff's insurance company to perform spinal cord stimulation. [AR at

10  265.] On February 26, 2010, Dr. Katouzian stated in a letter of medical necessity to plaintiff's

11  insurance company that "[plaintiff] has undergone lumbar epidural steroid injections as well as

12  lumbar facet blocks with temporary relief of his pain. [Plaintiff] has been referred by Dr. Samuel

13  Small (spine surgery), for trial of spinal cord stimulation for treatment of his chronic lumbar

14  radiculopathy. [Plaintiff] is not a candidate for surgical intervention due to [the] extreme diffuse

15  nature of his lumbar degenerative disc disease. In fact in reviewing Dr. Small's progress report[,]

16  he notes that in order to address [plaintiff's] symptoms surgically, this would require fusing just

17  about every level of the spine which is unlikely to give him pain relief." [AR at 266.] Dr.

18  Katouzian's opinions were supported by plaintiff's MRI results, plaintiff's pain treatment history,

19  and Dr. Small's findings.

20          The ALJ did not properly reject Dr. Katouzian's opinons. Accordingly, remand is warranted

21  on this issue.[5]

22  _____

23          [5]   As the ALJ determined plaintiff's RFC in part based upon her improper rejection of Dr.
    Katouzian's opinions, the Court exercises its discretion not to address herein plaintiff's second and
24  third contentions of error. The Court notes, however, that the ALJ's reasons for rejecting plaintiff's
    subjective symptom testimony, without more, do not appear to be sufficiently specific. The ALJ
25  does not explain *how* plaintiff's earnings history, or not looking for other work, undermine his
    credibility. [See AR at 18.] Plaintiff's lack of earnings in 2008 and 2009 [see AR at 104-11], for
26  example, is consistent with his testimony that he did not seek other work after his disability onset
    date "because I thought I could get back to it. And at the time I quit working, I did not feel capable
27  of looking for any type of employment[] anywhere because at any day, I cannot leave the house."
    [AR at 49.] On the contrary, had plaintiff *pursued* other work after his disability onset date, that
28

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate Dr. Katouzian's opinions.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 14, 2011

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

could be a proper reason to reject his testimony.  See Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1227, 1231 (9th Cir. 2009) (finding that "[t]he ALJ made specific findings in support of his decision to discount [plaintiff's] testimony," including that plaintiff "recently worked as a personal caregiver for two years [after her disability onset date], and has sought out other employment since then").